UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDERSON TRAYLOR EDWARDS, LTD.** | CIVIL ACTION |
| **VERSUS** | NO. 22-1024 |
| **BERKSHIRE HATHAWAY GUARD INSURANCE CO.** | SECTION: "G"(5) |

## ORDER AND REASONS

This litigation arises out of an insurance coverage dispute. Before the Court is Plaintiff Anderson Traylor Edwards, Ltd.'s ("Plaintiff") "Motion for Partial Summary Judgment on Bad Faith."[1] In the motion, Plaintiff asserts that there is no genuine issue of material fact as to whether Defendant Amguard Insurance Company ("Defendant") violated Louisiana Revised Statute § 22:1892 while processing Plaintiff's business interruption and property damage claims.[2] Defendant opposes the motion.[3] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies Plaintiff's motion.

## I. Background

On March 17, 2022, Plaintiff filed suit against Defendant in the Twenty-First Judicial District Court for the Parish of Tangipahoa, State of Louisiana.[4] Defendant filed a notice of removal in this Court on April 15, 2022.[5] According to the Complaint, Hurricane Ida struck

---

[1] Rec. Doc. 60.

[2] *Id.* at 1.

[3] Rec. Doc. 79.

[4] *See* Rec. Doc. 1-2.

[5] Rec. Doc. 1.

1

Plaintiff's property located at 509 Morris Avenue in Hammond, Louisiana (the "Property") on August 29, 2021.[6] Plaintiff asserts that Defendant provided a policy of insurance (the "Policy") covering the Property and any business interruption losses resulting from "perils including wind, hail, and any related damage from rain and/or water."[7] Plaintiff avers that the Property sustained extensive damage to its structure and contents and a significant loss of business income.[8] Plaintiff alleges that Defendant contracted with a third-party adjustor, Crawford & Co. ("Crawford"), to evaluate the claim.[9] Plaintiff contends that Defendant violated its duties under the bad faith statute due to its delays in tendering each of the five payments on Plaintiff's property and business interruption claims under the Policy.[10]

Plaintiff contends that Crawford performed an initial inspection of the Property on September 6, 2021, and completed its report the following day.[11] Plaintiff asserts that Crawford did not communicate with Plaintiff until November 12, 2021, and that Defendant "did not make any tender to Plaintiff until November 15, 2021, in the amount of $45,158.73."[12] Plaintiff further avers that it "submitted receipts for certain items, including damaged trees, that were not contained in [the] original tender submitted to Crawford" on November 16, 2021.[13] Plaintiff asserts that it

---

[6] Rec. Doc. 60-3 at 1.

[7] Rec. Doc. 1-2 at 2.

[8] *Id.*

[9] Rec. Doc. 60-2.

[10] *See generally id.*

[11] Rec. Doc. 60-1 at 2.

[12] *Id.*

[13] *Id.*

provided a letter to Crawford's field adjuster at the initial inspection "detailing the policy endorsements that were applicable to coverage for the trees" on the Property.[14] Plaintiff avers that Crawford recommended that Defendant pay for the trees and for receipts provided on November 16, 2021.[15]

Plaintiff asserts that Defendant sent a second payment on December 27, 2021, in the amount of $20,940.64 for damage to the trees and other reported losses on the Property.[16] Plaintiff avers that it submitted a proof of loss with estimates from two contractors finding losses of $217,305.88 to Defendant on December 3, 2021.[17] Plaintiff asserts that Defendant "declined to pay Plaintiff's proof of loss" on December 8, 2021, and stated that it would recommend a reinspection of the Property in the coming days.[18] Plaintiff argues that Defendant and Crawford failed to schedule a reinspection or raise the issue until March 21, 2022.[19] Plaintiff asserts that it "immediately agreed to the re-inspection, which occurred on March 29, 2022."[20]

Plaintiff contends that Crawford sent a claim update on April 19, 2022, indicating that an additional $62,385.90 in payment for exterior damages were found during the March 29, 2022 reinspection.[21] Plaintiff further asserts that Defendant did not tender this amount to Plaintiff until

---

[14] *Id.*

[15] *Id.* at 2–3.

[16] *Id.* at 3.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

May 27, 2022.[22] Plaintiff argues that Defendant requested a joint reinspection of the Property with Plaintiff's expert on April 27, 2022.[23] Plaintiff avers that the joint reinspection occurred "on May 4, 2022, and resulted in a revised estimate in the amount of $374,543.79 from Plaintiff's expert that was submitted to Defendant on May 12, 2022."[24] Plaintiff asserts that Defendant did not tender any amounts based on the May 4, 2022 joint reinspection until July 15, 2022, in the form of a check in the amount of $33,387.02.[25]

Plaintiff further alleges that it provided Crawford and Defendant with all relevant financial information on its losses from September 2021 through January 2022 for its business interruption claim.[26] Plaintiff contends that Crawford paid a $45,000.00 advance for the September 2021 business income losses on December 27, 2021.[27] Plaintiff asserts that Crawford tendered an amount of $188,586.00 for the lost business income for September and November 2021 on April 13, 2022.[28] Plaintiff maintains that the amount tendered is inadequate to cover the lost business income for the covered period and that Defendant made the insufficient tender 131 days after receiving satisfactory proof of loss.[29]

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 4.

[27] *Id.*

[28] *Id.*

[29] *Id.*

## II. Parties' Arguments

*A.    Plaintiff's Arguments in Support of the Motion*

In its motion, Plaintiff argues that Defendant violated Louisiana Revised Statute § 22:1892 because the five payments it has made to Plaintiff have "been wholly unreasonable in both amount and in regard to the time it was tendered."[30] Plaintiff contends that Defendant "has made each payment, regardless of the amount, well after the statutory deadline" and without any reasonable cause.[31] Plaintiff points out that Defendant did not disburse the initial payment on its property damage claim "until over 60 days after inspecting the Property and over 30 days after receiving the damage assessment report from Crawford."[32]

Plaintiff avers that Defendant further delayed each subsequent tender for its property damage claim for similar periods exceeding the statutory deadlines.[33] Plaintiff further asserts that Defendant's representative admitted that it "does not have a written policy in place for Louisiana first-party insurance claims to make payment within a certain period after receiving satisfactory proof of loss."[34] Thus, Plaintiff asserts that "Defendant's failure to make any payment within thirty days requires a finding that it is in violation of its duties owed to Plaintiff under" Louisiana Revised Statute § 22:1892.[35]

---

[30] Rec. Doc. 60-1 at 6.

[31] *Id.*

[32] *Id.* at 7.

[33] *Id.*

[34] *Id.* at 8.

[35] *Id.* at 7–8.

### B.     *Defendant's Arguments in Opposition to the Motion*

Defendant makes three arguments in opposition to the instant motion. First, Defendant argues that Plaintiff's motion is based upon inadmissible evidence because the submitted exhibits "were not properly authenticated" in accordance with Louisiana Code of Civil Procedure Article 966.[36] Defendant further objects to the exhibits and moves to strike the letters which Plaintiff relies on in its motion because they are unsworn or unverified documents submitted as evidence at depositions but not authenticated.[37] Second, Defendant argues that the exhibits are inadmissible hearsay and therefore not competent summary judgment evidence.[38]

Third, Defendant asserts that the Plaintiff has failed to meet its burden on the motion because it has failed to establish that Defendant acted in bad faith as defined by the statutes.[39] Defendant points out that other courts have found that "[a]n insurer is not in bad faith if it 'possesses a justifiable belief that the claim filed by its insured is not covered under the policy at issue.'"[40] Defendant argues that Plaintiff has not proven that Defendant acted in bad faith in processing the business interruption and property damage claim because a valid liability dispute regarding its causes existed.[41] Defendant contends that any alleged failure to tender payment for the losses is unfounded because it "issued a total of $161,872.29 for the building loss and

---

[36] Rec. Doc. 79 at 5–7.

[37] *Id.* at 5–9.

[38] *Id.* at 7.

[39] *Id.* at 9–10.

[40] *Id.* at 13–14 (quoting *Pilgrim Missionary Baptist Church v. Church Mut. Ins. Co.*, 2020 WL 6929995, at *20 (W.D. La. Nov. 24, 2020)).

[41] *Id.* at 15–18.

$188,586.00 for the business interruption loss."[42] Defendant contends that Plaintiff's business income damages "were delayed and not actually lost as a result of Hurricane Ida."[43]

Defendant avers that it could not make a good faith tender without satisfactory proof of loss information from Plaintiff because reasonable and legitimate questions existed as to the extent and causation of Plaintiff's claims.[44] Therefore, Defendant argues that this Court must deny the instant motion because the undisputed facts show that Defendant complied with the terms and conditions of the Policy.[45]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[47] All reasonable inferences are drawn in favor of the nonmoving party.[48] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[49]

---

[42] *Id.* at 16.

[43] *Id.*

[44] *Id.* at 21–22.

[45] *Id.* at 24–25.

[46] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[47] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[48] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[49] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[50] The nonmoving party may not rest upon the pleadings.[51] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[52]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[53] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[54] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[55] The nonmoving party must set forth

---

[50] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[51] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[52] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[53] *Celotex*, 477 U.S. at 323.

[54] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[55] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[56]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[57] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[58]

### IV. Analysis

In its motion, Plaintiff argues that it is entitled to summary judgment because "there are no issues of material fact" as to whether Defendant violated its duties under Louisiana Revised Statute § 22:1892.[59] Plaintiff argues that "Defendant's failure to make any payment within thirty days" of the dates of the initial inspection, Plaintiff's submission of proofs of loss and forensic accounting report, and the joint reinspection of the Property constitute five separate failures to pay an alleged undisputed portion of the claim.[60] Defendant contends that the Court should deny the instant motion because Plaintiff has failed to meet its burden to establish that Defendant acted in bad faith through undisputed facts and competent summary judgment evidence.[61]

Louisiana Revised Statute § 22:1892(A)(1) provides that an insurer has a duty to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss

---

[56] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[57] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[58] *Morris*, 144 F.3d at 380.

[59] Rec. Doc. 60-1 at 8.

[60] *Id.* at 7 (citing *Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/09), 999 So. 2d 1104) ("[A]n insurer need only fail to tender one undisputed portion of the claim to be subject to penalties . . . .").

[61] Rec. Doc. 79 at 13–15.

from the insured." Section 22:1892(B)(1) ascribes that a failure to pay that is "arbitrary, capricious, or without probable cause" renders an insurer liable for the resulting damages and for a statutory penalty, attorneys' fees, and costs. "It is the insured's burden to prove that the insurer acted in an arbitrary and capricious manner."[62] The Louisiana Supreme Court has found that an insurer's "obligation to act in good faith is triggered by knowledge of the particular situation, which knowledge '[t]he insurer has an affirmative duty' to gather during the claims process."[63] Other courts in the Eastern District of Louisiana have found that "[s]ummary [j]udgment is not appropriate when a claim for bad faith penalties depends on factual determinations concerning the reasonableness of the insurer's actions."[64]

Here, Plaintiff's bad faith claim relies on such factual determinations. This Court finds that Plaintiff has not satisfied its burden to prove that Defendant acted in bad faith because genuine disputes of material fact exist as to whether Plaintiff provided an adequate proof of loss to trigger Defendant's statutory obligations and whether Defendant's purported delayed tenders were the product of a genuine dispute of causation of damage to the Property.[65] Furthermore, Plaintiff's

---

[62] *Korndorffer v. USAA Cas. Ins. Co.*, No. 22-2035, 2023 WL 2351725 at *8 (E.D. La. Mar. 3, 2023) (citing *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th 2009)) (Brown, C.J.).

[63] *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 5/5/15), 169 So. 3d 328.

[64] *See, e.g.*, *Burrell v. Phillips*, No. 19-14711, 2021 WL 720635, at *3 (E.D. La. Feb. 24, 2021) (quoting *Johnson v. State Farm Mut. Auto. Ins. Co.*, 11-1991, 2012 WL 1745497, at *4 (E.D. La. May 16, 2012)) (Zainey, J.).

[65] The Court notes that it does not make any findings that Plaintiff's evidence accompanying its motion is or is not competent summary judgment evidence. Defendant insists that all of Plaintiff's evidence is either improperly authenticated or inadmissible hearsay. Rec. Doc. 79 at 3–9. These arguments are unavailing. Defendant contorts existing case law in support of its argument to exclude all of Plaintiff's Exhibits in support of the instant motion. *See id.* at 9 (construing authority to support a broad proposition that "Emails are inadmissible evidence in support or in opposition to a motion for summary judgment."). This Court finds that significant disputes of fact exist regarding the communications between Plaintiff, Defendant, and Crawford during the pendency of Plaintiff's claims and the precise dates in which Defendant approved payments for additional building coverages in the third and fourth tenders. *See, e.g.*, Rec. Doc. 79-1 at 7 (demonstrating dispute of fact as to the date that Defendant approved and tendered payment for coverage following the joint reinspection).

argument that Defendant acted in bad faith asks this Court to make factual determinations that are "not appropriate" at this stage of the litigation.[66] Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion[67] is **DENIED**.

**NEW ORLEANS, LOUISIANA** this __15th__ day of March, 2023.

                                                              */s/ Nannette Jolivette Brown*
                                          **NANNETTE JOLIVETTE BROWN**
                                          **CHIEF JUDGE**
                                          **UNITED STATES DISTRICT COURT**

---

[66] *Burrell*, 2021 WL 720635 at *3.

[67] Rec. Doc. 60.